## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

**LEVONZEL ANDERSON**                                                      **PLAINTIFF**

**VS.**                                                **CIVIL ACTION NO. 4:10cv128-LRA**

**SHANNON WARNOCK, ET AL**                             **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

This cause is before the Court *sua sponte* for evaluation pursuant to 28 U.S.C. § 1915(e)(2). The Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2), applies to prisoner proceedings *in forma pauperis* and provides that "the court shall dismiss the case at any time if the court determines that . . .(B) the action or appeal -- (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A plaintiff's claim shall be dismissed if "it lacks an arguable basis in law or fact, such as when a prisoner alleges the violation of a legal interest that does not exist." *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998).

### FACTS

Anderson appeared before the undersigned on March 3, 2011, for an omnibus hearing. He explained his claims under oath to the Court, and this explanation has been considered in conjunction with the allegations contained in the Complaint and pleadings. Although Anderson's pleadings are lengthy, Anderson explained his claims in detail to the Court.

Jurisdiction of this case is based upon 42 U.S.C. § 1983.  According to his Complaint, as augmented by his sworn testimony at the Spears hearing, Anderson is a felon convicted of murder and manslaughter in Hinds County, Mississippi, in 1996, and is serving a life sentence [and a 20 year sentence] in the custody of the Mississippi Department of Corrections [MDOC].  At the time the omnibus hearing was conducted, Anderson was housed in the East Mississippi Correctional Institute [EMCF] in Meridian, Mississippi.  He is now housed in the Marshall County Correctional Facility [MCCF] in Holly Springs, Mississippi.

The allegations contained in Anderson's Complaint are lengthy and will not be set forth in detail herein.  He categorized his claims at the omnibus hearing as "denial of parole."  In general, Anderson contends that some Defendants conspired to prevent him from being considered for parole.  He contends that he was sent to EMCF for long-term confinement in an effort to prevent his parole.  He does not articulate precisely how any of the named Defendants prevented his parole.  He has received four-year setoffs on three occasions; there are problems with receiving the application and being allowed to complete the form from EMCF.

According to Anderson, he sued Shannon Warnock because she is chairman of the Parole Board.  He testified that he could not get the people who really have fault, so he sued her because she was the chairman; "she didn't give me what you call supervision over her staff for not doing their job."

2

He sued Defendant Sparkman because he had Anderson transferred to EMCF after Anderson witnessed an incident at Parchman. He was up for parole four months after that and could not go in front of the parole board at EMCF. Anderson contends that you can only appear before the board at Parchman. At EMCF, it must be done only by application.

Anderson sued Defendant Grimes, the head of security at EMCF, because he refused to help him get the application. He sued Defendant Dr. Moore because he is a mental health counselor and should have examined his mental state, determined that nothing was wrong with him, and then recommended that Anderson be sent back to a state prison so that he could go in front of the parole board. He sued Doris Smith because she was the case manager who was supposed to have given him the parole application form. Instead, she had no idea where the application form was. In describing these claims more particularly, Anderson testified:

> ... And I informed him that I was coming up for parole and I needed an application to fill out to send back to the parole board. He said he has nothing to do with that, check with the case manager. So I checked with the case manager and the case manager said the same thing. He has nothing to do with it. Everyone is saying the same thing. Then I talked to doctor Thomas Moore, he said he has no control. I said does anybody know who gives me the application form for the parole board? Couldn't nobody tell me nothing.

Anderson testified that Defendants Sparkman and Grimes conspired to keep him confined so that he could not get out on parole to get the help he needed to file a complaint for the "assault in Parchman." Anderson says he witnessed an assault by the guards at

Parchman. He did not set forth the details of this assault or explain how Defendants Sparkman and Grimes were actually involved.

Anderson testified that Grimes made sure he did not get showers and yard call. Grimes also allowed officers to assault him and use excessive force against him. The officers would slam the food tray flap on his arm to keep him from putting his arm in the flap. Anderson testified that he was not really harmed, and that he knew it was a prison rule that the tray flaps stay closed. He knew he was not supposed to put his arm through the flap. Grimes did not actually slam the flap on his arm, but the officers who did were under his supervision. "Grimes didn't do nothing himself. But now as a warden of security, he got to make sure that his officers do their job according to the policies and procedures."

Anderson testified that he exhausted his administrative remedies by filing a "sensitive issue" notice with Commissioner Epps. He never received a response from any MDOC official and there is no record of an ARP being filed by Anderson. He has no Third Step Response confirming that he exhausted his administrative remedies.

## LEGAL ANALYSIS

In order to succeed on a § 1983 claim, a plaintiff must prove that a person acting under the color of state law violated a right secured by the Constitution or law of the United States. *West v. Atkins,* 487 U.S. 42, 48 (1988). Anderson describes his claim in this case as "denial of parole." Mississippi's parole statute does use the mandatory language "shall" throughout Miss. Code Ann. § 47-7-17, which instructs the Parole Board on the

4

examination of an offender's record and eligibility of parole. Anderson seems to argue that he does have a protected liberty interest in his parole hearings and that the Parole Board and these Defendants denied him a meaningful hearing as required by the statute. In turn, he may contend that his Fourteenth Amendment substantive due process rights were denied.

Yet this issue has already been squarely addressed by the courts. The Fifth Circuit recognizes that the distinction between the use of "may" and "shall" differentiates a prisoner's expectation of parole. *Scales v. Miss. State Parole Bd.*, 831 F.2d 565, 566 (5th Cir. 1987). In relevant part, the Mississippi legislature has enacted the following statutes to guide the Parole Board in determining eligibility for parole:

§ 47-7-3 Parole of prisoners; conditions for eligibility

Every prisoner who has been convicted of any offense against the State of Mississippi, and is confined in the execution of a judgment of such conviction in the Mississippi Department of Corrections for a definite term or terms of one (1) year or over, or for the term of his or her natural life, whose record of conduct shows that such prisoner has observed the rules of the department, and who has served not less than one-fourth (1/4) of the total of such term or terms for which such prisoner was sentenced, or, if sentenced to serve a term or terms of thirty (30) years or more, or, if sentenced for the term of the natural life of such prisoner, has served not less than ten (10) years of such life sentence, *may* be released. . . . Miss. Code Ann. § 47-7-3.

§ 47-7-17 Examination of an offender's record; Eligibility of parole

Within one (1) year after his admission and at such intervals thereafter as it may determine, the board shall secure and consider all pertinent information regarding each offender, except any under sentence of death or otherwise ineligible for parole, including the circumstances of his offense, his previous social history, his previous criminal record, including any records

5

> of law enforcement agencies or of a youth court regarding that offender's juvenile criminal history, his conduct, employment and attitude while in the custody of the department, and the reports of such physical and mental examinations as have been made. The board shall furnish at least three (3) months' written notice to each such offender of the date on which he is eligible for parole.
>
> Before ruling on the application for parole of any offender, the board may have the offender appear before it and interview him. . . A parole shall be ordered only for the best interest of society, not as an award of clemency; it shall not be considered to be a reduction of sentence or pardon. An offender shall be placed on parole only when arrangements have been made for his proper employment or for his maintenance and care, and when the board believes that he is able and willing to fulfill the obligations of a law-abiding citizen. . . .

In evaluating these statutes, the Fifth Circuit has held that, the use of the word "may" in Miss. Code Ann. § 47-7-3(1), indicates that the Parole Board has absolute discretion in determining parole. *Scales*, 831 F.2d at 566. Because of the Parole Board's great discretion, prisoners have no sure expectation of release, and in turn, they have no liberty interest in parole. *Id.*

There is mandatory language in § 47-7-17, not in § 47-7-3. The Mississippi Supreme Court has held that the statutes governing parole are to be read together as a statutory scheme. *Harden v. State*, 547 So. 2d 1150 (1989). For this reason, § 47-7-17 must be read along with § 47-7-3, and under this scheme, the Mississippi Supreme Court has held that the Parole Board's parole determinations are completely discretionary. *See id.*; *Vice v. State*, 679 So. 2d 205, 207 (Miss. 1996).

The Mississippi parole statutes indicate that parole is only granted at the discretion of the Parole Board. Because of the discretionary nature of parole, no prisoner has a reasonable expectation to surely be granted parole, and prisoners do not have a liberty interest in parole. Accordingly, Plaintiffs' substantive due process rights have not been violated.

Anderson generally also alleges that his procedural due process rights were violated. According to Anderson, the Parole Board failed to comply with the provision in § 47-7-17, which requires consideration of "all pertinent information" in making a parole determination. Anderson contends that he was not allowed to appear in person and that he was deterred by these Defendants from receiving the application for parole. He challenges the notice he was given, indicating it was not timely received. The Fifth Circuit has held that "in the absence of a cognizable liberty interest, a state prisoner cannot challenge parole procedures under the Due Process Clause." *Johnson v. Rodriguez*, 110 F. 3d 299, 308 (5th Cir. 1997). Because Anderson does not have a liberty interest in parole, his due process challenge to the parole procedures fails.

Anderson also generally complains about some conditions at EMCF, including the fact that some of the guards have shut the food tray flap on his arm. He admittedly was not harmed, and he has not sued any of the persons who actually shut the flap on his arm. He charges that Defendant Grimes is responsible for the actions of these guards who used "excessive force" against him. Yet, there is no liability under section 1983 under a theory

7

of *respondeat superior. Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978). Government officials may not be held liable for the unconstitutional conduct of their subordinates under a "supervisory liability" or *respondeat superior* theory. *Ashcroft v. IQBAL, et al*, 556 U.S. 662, 676-77 (2009), citing *Monell*, 436 U.S. at 691. Each government-official defendant, through the official's own individual actions, must have violated the Constitution; they are not held accountable for the misdeeds of their agents. *Id.* at 1948-49. Absent vicarious liability, each Government official is liable for his or her own misconduct. *Id.* No constitutional claim against any named Defendant regarding excessive force has been stated.

Anderson also contends that he was unlawfully transferred to EMCF from Parchman in a conspiracy to prevent him from obtaining parole. The Court takes judicial notice that the housing of an inmate does not prevent parole. Nevertheless, a prisoner does not have a constitutional right to serve a sentence in any particular institution, or to be transferred or not transferred from one facility to another. *Olim v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 49 (5th Cir. 1995). This Court does not interfere with the housing or transfer of inmates, and no constitutional claim has been stated by Anderson's general allegations that these Defendants conspired to transfer him to prevent his parole.

Finally, the Court also finds that Defendants are immune from this suit under the circumstances set forth by Anderson. "Qualified immunity provides government officials

performing discretionary functions with a shield against civil damages liability, so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). The immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 457 U.S. 335, 341 (1986). To overcome the immunity, a plaintiff must show that there has been a violation of a clearly established federal constitutional or statutory right and whether the official's actions violated that right to the extent that an objectively reasonable person would have known. *Id.*, omitting citation.

Anderson has not stated factual allegations which would overcome these Defendants' qualified immunity, and the Complaint must also be dismissed for this reason.

## CONCLUSION

For these reasons, the Court finds that the facts asserted by Anderson do not state a claim upon which relief may be granted and his Complaint is frivolous under the law. The Complaint shall be dismissed with prejudice pursuant to 28 U.S.C. §1915(e)(2)(B)(i) and (ii), and Final Judgment in favor of all Defendants shall be entered.

The dismissal shall be considered a strike under 28 U.S.C. § 1915(g). This provisions provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

IT IS, THEREFORE, ORDERED that the Complaint is dismissed with prejudice and Final Judgment in favor of Defendants is entered.

SO ORDERED this the 27th day of April 2012.

s/ Linda R. Anderson<br>UNITED STATES MAGISTRATE JUDGE